(No. 20150.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* GEORGE GUERTIN, Plaintiff in Error.

*Opinion filed December 18, 1930.*

FRANK J. BURNS, and JAMES T. BURNS, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, T. R. JOHNSTON, State's Attorney, and ROY D. JOHNSON, for the People.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

The plaintiff in error, George Guertin, was tried and convicted in the circuit court of Kankakee county upon an indictment which charged him, being a male person above the age of seventeen years, with having carnal knowledge of a female person under the age of sixteen years, not his wife. He was sentenced to imprisonment in the penitentiary for two years and has sued out a writ of error.

It is argued that it was error to admit in evidence People's exhibit 1, to refuse two instructions which were asked by the defendant, and to deny his motion for a new trial.

The girl upon whom the offense is charged to have been committed was fifteen years old and the defendant was twenty-two. They were of a rather low degree of intelligence. The defendant could not read. He had gone to school a short time but did not get beyond the third grade. The girl's father worked on the railroad, conducted a grocery store at the corner of Evergreen avenue and Birch street, in Kankakee, and lived with his wife and their two daughters, the complaining witness and her sister, four years older, in a house on the same lot as the store. The store was twenty feet wide and about forty feet long, facing west on Evergreen avenue. The store front was of glass, and across the east end of the room was a meat counter about three or four feet high. The complaining witness testified that on Thursday or Friday before the fair began on Monday, August 15, 1929, about ten o'clock in the morning, she was in the store taking care of it. Her mother had gone up-town and her sister was working. The defendant, who lived just across the street, came into the store and wanted an ice cream cone. While she was getting the ice cream cone he caught her and brought her back to the counter, where he did the acts which were the basis of the charge in the indictment. If her testimony is believed the charge was proved. She said nothing about the occurrence until two

months later, when she went with her mother to Chicago to a doctor, who took her to the Cook County Hospital, where she remained about three weeks and where she told her mother. Soon after, on November 4, 1929, the defendant was arrested. He was taken to the State's attorney's office, where he was questioned by the State's attorney and an investigator for the State's attorney. He answered questions without hesitation and willingly signed a statement written by the State's attorney and read to the defendant. It stated that about a year before he had sexual intercourse with the complaining witness in the store at 606 North Evergreen avenue, in Kankakee; that she told him she was sixteen years old. This statement (People's exhibit 1) was objected to as being improper and immaterial, and its admission in evidence is one of the errors assigned and relied upon as a reason for reversal. There was no objection that it was not freely and voluntarily made and it is not contended now that it was not so made. The document was not improper or immaterial and was properly admitted in evidence. The weight to be given to it was for the determination of the jury. The defendant went on the witness stand and testified that he signed it before he saw his attorney; that it was not explained to him but was read to him by the State's attorney; that he did not know at the time he testified what sexual intercourse meant; that the State's attorney asked him to sign and he signed willingly; that said term was not explained to him nor any other terms used in the statement, and he stated that he never had sexual relations with the complaining witness. He went to the store for an ice cream cone, had been there before to buy ice cream cones, and played with her before the same as he played with her on that day. Both testified as to what occurred between them on that occasion. They were both standing. Their testimony differs in details as to their relative position and their acts, and it is argued that there is no sufficient proof that there was sexual intercourse. There

is no doubt, without any regard to the written statement signed by the defendant, that he engaged in taking indecent liberties with the girl. The only point upon which it can be argued that there is a failure of full proof, disregarding entirely the testimony of the complaining witness and relying entirely on that of the defendant, is the question of the actual penetration of her body. His testimony leaves it doubtful. He testified in chief that he did not penetrate her body and did not try to. On cross-examination he answered that when interrogated at the State's attorney's office on this question he said he did not know. "I think now I did not. I don't know whether I did or not. I don't know whether I might have had it there or not." The testimony of the prosecutrix on this question is positive. It is argued that from the testimony, considering the difference in stature of the prosecutrix and the defendant and their relative position as testified to by the defendant, sexual intercourse would have been physically impossible. The jury which tried this case was composed of men who saw and heard the defendant and the prosecuting witness and were capable of weighing their testimony and the probabilities and possibilities appearing from it. We see no reason to disagree with their conclusion.

It is insisted that the proof that the complaining witness was under sixteen years old was not sufficient. At the trial, in January, 1930, she testified that she would be sixteen years old on the next February 9; that she was born in 1914; that she had a record at home showing when she was born; that she looked for it and could not find it; that it was her birth certificate secured from a priest and would show how old she was, the date she was baptized and when she was born; that it was signed by the priest. Her sister, four years older, also testified that she would be sixteen years old on February 9, 1930; that she was born in 1914, and she, too, testified that she got her information from a baptismal certificate showing when her sister was baptized,

but she did not know how old her sister was when she was baptized; that she remembered how old her sister was; that they had grown up together, had always lived together, and that is how she knew. Her father, who was unable to speak English and was examined through an interpreter, testified that she was born in Chicago in February, and in answer to the question, "She was born, then, February 9, 1914?" the interpreter stated, "He says 1909, February, 1909; she was born in 1909; she will be sixteen on February 9 next." It seems probable that the witness or the interpreter confused the nines in the date and that the testimony of the father was not contradictory of itself as well as of his daughters. Again, it may be said the jurors saw and heard the prosecutrix and the witnesses, and our conclusion agrees with their verdict.

The court instructed the jury that the proof of the defendant's guilt must be beyond a reasonable doubt but gave no instruction defining such doubt. The defendant asked that the instruction on reasonable doubt which was approved in *Wacaser* v. *People,* 134 Ill. 438, be given to the jury, but it was refused. It should have been given, but its refusal was not error prejudicial to the defendant. Doubt has frequently been expressed by courts and text-writers whether attempted definitions of reasonable doubt do not tend to confusion rather than a clearer comprehension of the meaning of the term, since the words themselves are more readily understood than the definitions which have been given of them. A judgment will not be reversed for the reason, alone, of the court's refusal of an instruction defining reasonable doubt where it does not appear that such refusal was prejudicial to the defendant. In this case the giving or refusing of the instruction could not, with any show of reason, have had any effect on the verdict.

The other instruction whose refusal is complained of should have been given, it is said, because it purported to give the requisites of the crime of assault with intent to

commit rape and in no other instruction were these requisites given. Since the verdict found the defendant guilty of the completed crime of rape, instructions on the attempt were immaterial.

There was little contradiction between the testimony of the prosecutrix and the defendant in material matters. She testified to the use of force on his part and to resistance on hers, both of which he denied. Neither was material, for the use of force was not material to the offense and acquiescence or failure to resist was no defense.

On the motion for a new trial an affidavit of the defendant's attorneys was filed showing that the prosecutrix testified that when the alleged intercourse occurred she and the defendant were standing erect back of the counter, and that no testimony as to the position of their bodies was given by anyone else except the defendant, who testified that he did not have intercourse with her but took indecent liberties with her while both were in an erect position, with the back of her body against the front of the defendant's body. The affidavit also stated that the prosecutrix had made the statement to the State's attorney, after the prosecution rested, that the position of her body and the defendant's was as testified by the defendant and she would so testify on another trial if one were allowed, and that this information did not come to the affiant until after the close of the trial. Certificates of the county clerk of Cook county were also presented showing that he had made diligent search of the records of births of Cook county for the years 1912 to 1915, inclusive, but had not found any record of the birth of the prosecutrix or any other person of like name, and the affidavit of the defendant's attorney also stated that these certificates could not be procured until after the trial because neither the defendant nor his attorney knew where the prosecuting witness was born. Neither of these items of evidence was conclusive in its nature, and it does not appear that they would produce a different

verdict on another trial. Moreover, the bill of exceptions shows that the State's attorney called the prosecutrix in rebuttal and asked her to tell the jury in which way she and the defendant were facing when the act occurred.. The defendant objected, his objection was sustained, and thus the exclusion of the evidence which he now gives as a reason for a new trial was caused by his own act.

The judgment is affirmed. *Judgment affirmed.*